KLIEBERT, Chief Judge.
The plaintiffs, Shirley Hartmann, wife of/and Richard P. Carriere (the Carrieres), appeal a judgment granting the defendant’s, Bank of Louisiana (BOL), motion for summary judgment, thus dismissing plaintiffs’ suit for (1) rent due under a ground lease, (2) property taxes, and (3) the cost of repairs to the building situated on the plaintiffs’ land, or (4) alternatively, for unjust enrichment. The judgment also dismissed the plaintiffs’ motion for partial summary judgment on the issue of past due rentals and reserved BOL’s rights under its reconventional demand for damages for slander of title and disturbance of possession.
The litigants argue that the fundamental issue is whether the building, claimed by the defendant bank as owner, can remain on the plaintiffs’ land without the payment of rent. In actuality, however, to reach that issue the following underlying issues must be resolved first, i.e., is the ground lease on plaintiffs’ land, (granted by plaintiffs to the original building owner, Frank A. Occhipinti, Inc.) still in effect and, if so, did it contemplate the situation presented here and, if not, then what is the relationship between the plaintiffs-landowners and the defendant, who claims ownership of the building by virtue of a judicial sale. For the reasons hereafter stated, we set aside the trial court’s order granting the defendant’s motion for summary judgment and remand for a trial on the merits.
The Carrieres own a plot of land designated as Farm Plot 158, Hessmer Farms Subdivision, Section “B”, bearing Municipal Number 2712 North Arnoult Road in Me- *156 tairie, Louisiana. On April 23, 1982 the Carrieres entered into a ground lease with Frank A. Occhipinti, Inc. The lease contemplated the construction of a building on the leased land. Occhipinti subsequently-obtained financing through Gulf Federal Savings and Loan Association to construct a building for a restaurant. Apparently, at the request of lender, to accommodate the financing, the original ground lease was amended on January 10, 1983 and again on March 1, 1983.
In 1987, Occhipinti refinanced the Gulf Federal loan through Bank of the South. This resulted in a further amendment to the ground lease on June 26, 1987. On June 27, 1987 Occhipinti obtained a mortgage loan in the amount of $1,200,000 from Bank of the South, secured by a collateral mortgage on the leasehold estate which included all of the buildings and improvements located on the property. Eventually BOL acquired Bank of the South and, as successor in interest, became the holder of the note secured by the collateral mortgage on the leasehold estate.
In 1988, Occhipinti filed for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 bankruptcy proceedings were converted to Chapter 7 proceedings on March 28, 1989. In May 1989 the trustee who was administering the Occhipinti bankruptcy estate rejected the ground lease and dismissed from the bankruptcy proceedings the leasehold improvements as assets of value to the bankruptcy estate.
In January 1989 Occhipinti ceased to make rental payments due under the ground lease and failed to pay the 1988 property taxes as required by the lease provisions. As a result the Carrieres issued a notice of default to Occhipinti on June 12, 1989 and a notice to vacate the premises on July 7, 1989, providing copies of both notices to BOL. On July 19, 1989 the Carrieres filed suit to evict Occhipinti.
Thereafter BOL filed foreclosure proceedings, via executiva, on the Occhipinti note and collateral mortgage. At a sheriffs sale on September 20, 1989, BOL purchased the mortgaged property, i.e., the leasehold estate, which included the building and improvements located on the plaintiffs’ land. On October 3, 1989 the plaintiffs amended their eviction petition to name BOL, demanding that the lease be terminated and the premises vacated.
The district court rendered judgment on January 8, 1990 in favor of the plaintiffs and ordered the defendants to vacate the premises, declared the lease terminated, and granted the Carrieres a lessor’s privilege. BOL appealed to this Court. On October 20, 1990 a panel of this Court rendered an opinion which reversed the district court’s judgment. See Carriere v. Frank A. Occhipinti, Inc., 570 So.2d 43 (5th Cir.1990), writ denied, 575 So.2d 392 (La.1991). There the Court said:
We expressly do not rule on the ownership- of the property. Disputes as to ownership of property must be adjudicated in an ordinary proceeding and not in a summary eviction proceeding. * * * Nor do we rule on Bank of Louisiana’s mortgage rights, as evidence pertaining to that issue is not in the record. In addition, neither the right of the Carri-eres to rental payments, if any, nor the right of Bank of Louisiana, if any, to exercise the option to extend the lease is before us. These are issues which must be resolved in other proceedings.
Carriere v. Frank A. Occhipinti, Inc., supra, at 46.
On March 7, 1991 the Carrieres filed the suit now before us, contending that from the date of the judicial sale BOL was liable for rent payments under the lease, for property taxes paid by the plaintiffs since Occhipinti’s default, and for necessary repairs to the building. Subsequently, the plaintiffs amended their petition to seek recovery under the alternative theory of unjust enrichment. BOL answered and reconvened, as noted above. Thereafter, BOL filed a motion for summary judgment, while the plaintiffs filed a motion for partial summary judgment. The trial judge denied the Carrieres’ motion but granted BOL’s and dismissed the plaintiffs’ suit, resulting in this appeal.
The issues raised by pleadings first require a decision as to whether the lease *157 was still in effect after the judicial sale and, if so, the interpretation of parts of the ground lease and its amendments to determine whether it was applicable to the situation presented here. These provisions stipulated that (1) any “mortgagee or holder of indebtedness” would have the option to perform under the lease, but the lessor expressly waived imposition of liability for rent or other performance by such mortgagee; (2) the amendments to the lease were made in order to induce the lender to finance the project; (3) the improvements on the property would remain subject to the lender’s mortgage until the mortgage was fully paid; and (4) the lender appeared only to enforce its rights and would have no obligation under the lease. Moreover, if the lease is not applicable then is the unjust enrichment theory applicable?
A motion for summary judgment is properly granted only “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to summary judgment as a matter of law.” LSA-C.C.P. art. 966; Penalber v. Blount, 550 So.2d 577 (La.1989). The summary judgment procedure should be used cautiously and sparingly and any reasonable doubt should be resolved against the mover and in favor of a full trial on the merits. Riviere v. Bethard, 422 So.2d 1341 (3rd Cir.1982). Summary judgment is not appropriate when there is any real doubt as to whether there are genuine issues of material fact. Finley v. Safeco Ins. Co., 511 So.2d 457 (3rd Cir.1987).
The crucial facts needed to resolve the application or non-application of the ground lease are the intent, motive, malice, knowledge, or good faith of the parties to the lease when they agreed to the provisions designed to protect the lender’s collateral. What did these provisions mean and were they intended to apply only so long as the lender’s mortgage was in effect, or were they to apply even after the mortgage was extinguished by confusion via the lender’s purchase of the property at sheriff’s sale subsequent to foreclosure, as eventually occurred?
Only after determining the parties’ intent, motive, malice, knowledge, good faith, etc., can we answer the questions raised at the beginning of this opinion — i.e., whether the ground lease is still in effect and, if so, did it contemplate the situation presented here and, if not, what is the nature of the relationship between the landowners and the defendant, who claims ownership of the building by virtue of a judicial sale?
Those questions remain unanswered in the record before us. We conclude “the intent and knowledge of the parties must be developed at trial on the merits to determine the applicability and validity” of the lender-protective clauses in the written contract. Bertrand v. Lala v. Chemfix Technologies, Inc., 600 So.2d 788 (5th Cir.1992).
For the foregoing reasons, the judgment of the district court is vacated and the matter is remanded for further proceedings in accordance with this opinion. The costs of this appeal are assessed equally against the parties.
VACATED AND REMANDED.